1

2

3                          UNITED STATES DISTRICT COURT

4                                DISTRICT OF NEVADA

5                                        * * *

6    DAVID B. CLARK, individually and as        Case No. 3:24-cv-00437-MMD-CLB
     trustee for The Clark Trust,
7                                                             ORDER
                                 Plaintiff,
8          v.

9    DOMA TITLE INSURANCE INC.,

10                               Defendant.

11

12   **I.    SUMMARY**

13          Plaintiff David B. Clark sued Defendant Doma Title Insurance Inc., who provided

14   him a title insurance policy on a property that he used to own, in state court after

15   Defendant refused to defend him or cover his costs in legal proceedings regarding the

16   discovery of an easement on the property that lowered the property's value in a

17   subsequent sale. (ECF No. 1-1.) Defendant removed the case to this Court. (ECF No. 1.)

18   Before the Court are: (1) Defendant's motion to dismiss, primarily arguing that the title

19   insurance policy does not provide the coverage Plaintiff would like it to because Plaintiff

20   transferred the property more than once before the previously undiscovered easement

21   became an issue (ECF No. 6 ("Motion"));[1] and (2) Plaintiff's counter motion for leave to

22   file an amended complaint (ECF No. 16).[2] Applying the appropriate legal principles,

23   because Plaintiff plausibly 'has liability by reason of warranties in any transfer or

24   conveyance of title,' and as further explained below, the Court will deny Defendant's

25   Motion. The Court will also grant Plaintiff's counter motion to amend because Plaintiff's

26

27

28           [1]Plaintiff responded (ECF No. 15) and Defendant replied (ECF No. 22).

             [2]Defendant responded (ECF No. 23) and Plaintiff replied (ECF No. 26).

1 | proposed, amended complaint fixes a material pleading error and the Court cannot
2 | otherwise say amendment would be futile.

3 | **II.    BACKGROUND**

4 |       The following allegations are adapted from the Complaint. Plaintiff bought the
5 | property now known as 2975 Northtowne Lane, Reno, NV, 89512, APN 026-031-41 (the
6 | "Property") in 2018. (ECF No. 1-1 at 4.) Back in 1996, the Property was created when the
7 | family who owned a larger parcel at the time divided it in two. (*Id.*) That same family also
8 | created a slope easement on the Property and recorded it in 1996 when they subdivided
9 | the land to create the Property. (*Id.*)

10 |       Shortly after becoming the owner of the Property as the successor and/or assignee
11 | of Ken Wong,[3] who had entered into a purchase agreement to obtain it from the Sellers,
12 | Plaintiff transferred the Property to himself in his capacity as trustee of The Clark Trust.
13 | (*Id.*) The Sellers did not disclose the existence of the slope easement. (*Id.* at 5.)

14 |       Clark later sold the Property to Northtowne Self Storage, LLC. (*Id.*) In January
15 | 2020, Northtowne Self Storage, LLC conveyed the Property to Northtown Self-Storage
16 | LLC ("Northtown") to correct an error in the purchasing entity's name. (*Id.*) Clark conveyed
17 | the Property to Northtown in exchange for an interest in Northtown. (*Id.*)

18 |       Clark executed a Vacant Land Offer and Acceptance Agreement (the "PSA") with
19 | Northtown when he conveyed the Property to it. (*Id.*) Northtown took title to the Property,
20 | "subject to . . . easements of record, if any, that do not materially affect the value or
21 | intended use of the Property." (*Id.*) "The PSA further reserved to Northtown the right to
22 | recover from Clark damages in the event of a breach of warranty[,]" and provided that the
23 | written representations and warranties in the PSA survived conveyance of the Property.
24 | (*Id.*)

25 | ///

26 | ///

27 | 
28 |     [3]Ken Wong purchased the Property from Western Financial, LLC and A and H Insurance, Inc. (the "Sellers"). (ECF No. 1-1 at 4.)

1    While Plaintiff goes on to allege that he purchased an owner's policy of title

2    insurance from North American Title Insurance Company[4] that issued on September 5,

3    2018 with policy number NV595-18-00626-01 (the "Policy") in connection with his

4    conveyance of the Property to Northtown, Defendant points out this cannot be correct in

5    its Motion (ECF No. 6 at 2-4), and Plaintiff concedes this allegation is incorrect in response

6    (ECF No. 16 at 2 n.1)—and indeed seeks leave to amend in part to correct this error (*id.*;

7    *see also id.* at 21-22; ECF Nos. 16-1 (proposed, amended complaint), 16-2 (proposed,

8    amended complaint with redlines)). Plaintiff thus clarifies that he obtained the Policy when

9    he became the owner of the Property in September 2018. (ECF No. 16-2 at 4.)

10    Plaintiff further alleges the Policy covers losses due to encumbrances on title and

11    does not except the slope easement from coverage. (ECF No. 1-1 at 5.) He also alleges

12    the Policy continues to insure him "so long as [Clark] shall have liability by reason of

13    warranties in any transfer or conveyance of the Title[.]" (*Id.* at 6.) Defendant proffers a

14    copy of the Policy with its Motion. (ECF No. 6-1.) The pertinent clause quoted immediately

15    above, also key to resolution of the Motion, reads in full:

16    **2.  CONTINUATION OF INSURANCE**

17    The coverage of this policy shall continue in force as of Date of Policy in favor of an

18    Insured, but only so long as the Insured retains an estate or interest in the Land, or holds

19    an obligation secured by a purchase money Mortgage given by a purchaser from the

20    Insured, or only so long as the Insured shall have liability by reason of warranties in any

21    transfer or conveyance of the Title. This policy shall not continue in force in favor of any

       purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an

22    obligation secured by a purchase money Mortgage given to the Insured.

23    (*Id.* at 3.)

24    Northtown went on to develop a self-storage facility on the Property. (ECF No. 1-1

25    at 6.) Northtown found a buyer for the Property in either late 2021 or early 2022 after the

26    self-storage facility was up and operating, but the proposed buyer conducted its own title

27

28    _____

       [4]North American Title Insurance Company later changed its name to Doma Title
       Insurance Inc. (ECF No. 1-1 at 5.)

1   search before buying the Property, and then backed out of the transaction once it found

2   out about the slope easement encumbering the Property. (*Id.*) Northtown later sold the

3   Property to MMA Storage LLC at a lower price than the previous potential buyer was

4   willing to pay. (*Id.*) This caused Northtown to demand from Plaintiff reimbursement of

5   more than $4 million in damages Northtown claims it suffered from the reduced sales

6   price. (*Id.*) Northtown asserts those damages flow from Plaintiff's failure to disclose the

7   slope easement. (*Id.*)

8       Plaintiff, in turn, sued the Sellers in state court for their failure to disclose the slope

9   easement in September 2018 when he first (albeit temporarily) became the owner of the

10  Property. (*Id.*) Plaintiff submitted a title insurance claim to Defendant requesting indemnity

11  up to the Policy's limit and requesting that Defendant take over Plaintiff's prosecution of

12  his lawsuit against the Sellers. (*Id.* at 6.) Between February and June 2024, Plaintiff and

13  Defendant went back and forth about Plaintiff's claim, but Defendant repeatedly denied

14  it. (*Id.* at 6-7.) This lawsuit followed.

15      Plaintiff brings four claims: (1) for a declaratory judgment that Defendant "has an

16  obligation under the [P]olicy to tender a defense and to fully indemnify [Plaintiff] from and

17  against any claims resulting or arising from damages and losses [Plaintiff] sustained[;]"

18  (2) for breach of the Policy; (3) for contractual breach of the covenant of good faith and

19  fair dealing implied in the Policy; and (4) for violation of NRS § 686A.310 because of the

20  way Defendant denied Plaintiff's claim. (*Id.* at 8-11.)

21  **III.    DISCUSSION**

22      The Court first addresses Defendant's Motion, and then addresses Plaintiff's

23  motion for leave to file an amended complaint.

24      **A.    Motion to Dismiss**

25      Defendant argues the Court must dismiss Plaintiff's declaratory relief and breach

26  of contract claims because the Policy does not cover Plaintiff's loss, and otherwise argues

27  Plaintiff's third and fourth claims fail because they are merely based on Defendant's

28  reasonable denial of Plaintiff's claim. (ECF No. 6.) Defendant more specifically argues

that Condition 2 of the Policy provides that coverage, "ends once an insured owner conveys title to the property unless the insured's deed contains special warranties for which the insured has liability to the insured's grantee[,]" but the pertinent deed did not, so Plaintiff's coverage ended once he conveyed the Property. (*Id.* at 10.) Plaintiff counters that Defendant's interpretation of Condition 2 of the Policy is incorrect under the pertinent legal standards because he retains liability on warranties made while he owned the Property. (ECF No. 16 at 1-2, 6-14.) The Court agrees with Plaintiff.

Several sets of overlapping legal principles govern the Court's review of the Motion. First, "[w]hen ruling on a motion to dismiss, [the Court must] accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). Second, Defendant's Motion is based on its interpretation of the Policy. (ECF No. 6.) A title insurance policy is "is simply a contract and its provisions should, of course, be construed as in any other contract." *Pioneer Title Ins. & Tr. Co. v. Cantrell*, 286 P.2d 261, 263 (Nev. 1955) (citation omitted). However, and third, "[w]hile clauses providing coverage [in insurance contracts] are interpreted broadly so as to afford the greatest possible coverage to the insured, clauses excluding coverage are interpreted narrowly against the insurer." *Nat'l Union Fire Ins. Co. of State of Pa. v. Reno's Exec. Air, Inc.*, 682 P.2d 1380, 1383 (Nev. 1984) (citation omitted). Fourth, and finally, contract interpretation presents questions of law that may be resolved at the motion to dismiss stage. *See generally Deutsche Bank Nat'l Tr. Co. as Tr. for Registered Holders of Morgan Stanley ABS Cap. I Tr. 2004-HE8, Mortg. Pass-Through Certificates, Series 2004-HE8 v. Fid. Nat'l Title Ins. Co.*, 536 P.3d 915 (Nev. 2023) (interpreting title insurance provisions on review of lower court order granting motion to dismiss).

The key sentence of Condition 2 is written in the disjunctive: if any of the three conditions described therein are true, then coverage continues. (ECF No. 6-1 at 3.) According to Defendant, the Nevada Supreme Court has not interpreted Condition 2. (ECF No. 6 at 10.) But Defendant points to nonbinding cases from other jurisdictions to

buttress its argument based on the first of the three conditions disjunctively listed in Condition 2 that Plaintiff's title insurance terminated when he conveyed the Property, first to himself as trustee of his trust and then immediately afterwards to Northtown. (*Id.* at 9-11.) However, Plaintiff counters that the Policy covers his loss because the third of three conditions is the applicable one here—he gave Northtown warranties and the right to recover against him for breach of those warranties in the PSA. (ECF No. 16 at 3, 5-9.) Thus, Plaintiff argues, his coverage under the Policy continued after he conveyed away the Property. (*Id.*)

Plaintiff's argument reflects a plausible reading of the key paragraph of his Complaint and renders Defendant's main argument in its Motion unpersuasive. Plaintiff specifically alleges in ¶ 16 of his Complaint that: (1) Northtown only took title to the Property subject to easements of record that do not materially affect the value or intended use of the Property; (2) the PSA gave Northtown the right to recover against him in the event of a breach of warranty; and (3) all written representations and warranties in the PSA survived the conveyance of the Property. (ECF No. 1-1 at 5.) Plaintiff otherwise alleges that Northtown demanded reimbursement of more than $4 million in damages for failing to disclose the slope easement. (*Id.* at 6.) An easement that caused more than $4 million in damages is plausibly one that materially affected the value of the Property.

And these allegations plausibly fall within the third condition listed in the key sentence of Condition 2; "only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title." (ECF No. 6-1 at 3.) "Title" is defined as, "[t]he estate or interest described in Schedule A[.]" (*Id.*) Schedule A, in turn, refers to Exhibit A. (*Id.* at 7.) Exhibit A lists the Property, as evidenced by the fact that it includes APN 026-031-41. (*Id.* at 8.) Thus, this condition applies to transfers or conveyances of the Property. Moreover, the PSA is plausibly a document effecting "transfer or conveyance" of the Property because Plaintiff entered into it, "[i]n connection with the Property's conveyance from Clark to Northtown[.]" (ECF No. 1-1 at 5.) And Plaintiff otherwise alleges in ¶ 16 of his Complaint that he warrantied to Northtown in the PSA

1  there were no easements that would materially affect the value of the Property and gave

2  them the right to recover against him if there turned out to be—which allegedly happened.

3  (*Id.* at 5-6.) The Court accordingly rejects Defendant's contrary argument—that there is

4  no possibility of coverage under the Policy based on the allegations in the Complaint—

5  because there plausibly could be.

6         Defendant argues in reply that Plaintiff does not support the argument the Court

7  agreed with immediately above with any pertinent caselaw (ECF No. 22 at 3-5), but also

8  states in its Motion that the starting point for contractual interpretation is the plain

9  language of the policy (ECF No. 6 at 8). Defendant also mentioned that the Nevada

10  Supreme Court has not interpreted Condition 2. (*Id.* at 10.) In the absence of binding

11  precedent to the contrary, the Court interpreted Condition 2 above based on its plain

12  language in the context of Plaintiff's pertinent allegations in his Complaint. Read carefully,

13  Defendant does not argue there is anything improper about that. And while Defendant

14  raises several arguments for the first time in reply, "[i]ssues raised for the first time in a

15  reply brief are typically waived[.]" *Ironshore Indem. Inc. v. Kay*, 628 F. Supp. 3d 1056,

16  1066 n.60 (D. Nev. 2022) (citation omitted), *aff'd sub nom. Ironshore Indem., Inc. v.*

17  *Rogas*, No. 22-16592, 2023 WL 6999435 (9th Cir. Oct. 24, 2023). (ECF No. 22 at 5-9

18  (making these arguments).) Moreover, finding Defendant's other arguments raised for the

19  first time in reply determinative at the motion to dismiss stage would contravene the

20  principles mentioned above—that the Court must construe the pleadings in the light most

21  favorable to Plaintiff as the nonmoving party, *see Ass'n for Los Angeles Deputy Sheriffs*,

22  648 F.3d at 991, and interpret the Policy "broadly so as to afford the greatest possible

23  coverage to the insured," *see Nat'l Union Fire Ins. Co. of State of Pa.*, 682 P.2d at 1383.

24         Said otherwise, the Court rejects the primary argument Defendant advances in the

25  Motion as unpersuasive under the governing legal principles the Court must apply. And

26  Defendant's arguments in the Motion regarding Plaintiff's third and fourth claims are

27  based upon the argument the Court rejects as to Plaintiff's first and second claims. (ECF

28  No. 6 at 14 ("necessarily fails for the same reason as Clark's declaratory relief and breach

of contract claims"), 15 ("Clark's mere disagreement as to Doma's interpretation of the Policy").) The Court accordingly rejects those arguments built upon Defendant's primary argument as well.

In sum, the Court denies the Motion.

**B.      Motion to Amend**

Plaintiff moves to amend to fix an admitted issue with its Complaint and to flesh out its allegations regarding its third and fourth claims, arguing these proposed amendments are directly responsive to arguments Defendant raised in its Motion that his third and fourth claims were too vague in his initial Complaint. (ECF No. 16 at 21-22.) Defendant counters that it would be futile to grant Plaintiff leave to amend. (ECF No. 23 at 10-15.) The Court will grant the motion to amend because it does not find that amendment would be futile, and justice otherwise requires it.

The Court has discretion to grant leave to amend and should freely do so "when justice so requires." Fed. R. Civ. P. 15(a); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Nonetheless, the Court may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

To start, the parties agree that the Complaint contains a material defect that Plaintiff fixes in the proposed, amended complaint—clarifying that Plaintiff purchased the Policy when he acquired the Property, not when he conveyed it to Northtown. (ECF Nos. 6 at 2-4 (pointing out the impossibility of the allegation), 16 at 2 n.1 (conceding this allegation is incorrect in response), 21-22 (seeking leave to amend in part to fix this error), 16-1 (proposed, amended complaint), 16-2 (proposed, amended complaint with redlines).) And the fact that Plaintiff submitted a redlined version of his proposed, amended complaint makes it easy to see that Plaintiff fixes this issue. (ECF No. 16-2 at 4.) It would be illogical to force Plaintiff to proceed on a Complaint containing a material

8

defect he is trying to fix—particularly given there is no dispute about the necessity of fixing it.

The proposed, amended complaint also contains additional factual allegations going to Plaintiff's third and fourth claims intended to address the vagueness issues Defendant raised as to these claims in its Motion. (*Id.* at 6-8.) The Court cannot say that these proposed amendments would be futile. And in any event, Defendant is not foreclosed from raising similar arguments to those it raised in the Motion as to Plaintiff's third and fourth claims as amended.

**IV.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant's motion to dismiss (ECF No. 6) is denied.

It is further ordered that Plaintiff's motion for leave to amend (ECF No. 16) is granted.

DATED THIS 27th Day of March 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE